IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SIERRA N. HEDGECOCK,

    Claimant,

v.                                                                                               Civ. No. 14-417 WJ/SCY

CAROLYN W. COLVIN,
*Commissioner of the*
*Social Security Administration*,

    Defendant.

## REPORT AND RECOMMENDATIONS

This matter is before me on Claimant's Motion to Reverse and Remand the Social Security Administration (SSA) Commissioner's decision to deny Claimant disability insurance benefits. *Doc. 20*. For the reasons discussed below, I recommend that the Court grant Claimant's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

**I.**     **BACKGROUND**

    **A.**   **Claimant's medical history**

Claimant Sierra Hedgecock is a twenty-five year old woman who suffers from a variety of psychological ailments arising from a troubled childhood and subsequent adult struggles. The earliest reports of Claimant's psychological issues begins in 1996, when Claimant was six years old, but Claimant's medical records begin in December 1999, with a psychological examination by Dr. Robert Grant, a psychologist. Administrative Record (AR) at 369, 401-402. At that time, Dr. Grant assessed Claimant as having an IQ in the mildly retarded range and opined that her low IQ could indicate either "[a] serious developmental learning disability or a possible left

1

hemisphere lesion resulting in neuropsychological impartment." AR at 401.  He also observed that Claimant had symptoms consistent with attention deficit/hyperactivity disorder (ADHD).  AR at 401-402.

In February of that year, Claimant was evaluated by Dr. Donald Frazier, a psychologist at Hillcrest Elementary School in Carlsbad, New Mexico.  AR at 367.  Dr. Frazier found that Claimant had significant behavioral problems and exhibited signs of ADHD, depression, learning disabilities, social withdrawal, poor impulsive control and inability to control her anger.  AR at 368, 371-377.  He ultimately diagnosed her as having ADHD, Oppositional –Defiant Disorder, Intermittent Explosive Disorder, and Generalized Anxiety Disorder, but acknowledged that physiological reasons for some of those conditions (such as a lesion) had not been ruled out.  AR at  395.  In April 2000, Dr. Laurie Rief reported that Claimant was receiving the medication clonidine. AR 364.

Claimant received her next psychological evaluation at the behest of the New Mexico Children, Youth, and Families Department in August 2007.  AR at 347.  The purpose of this evaluation was to determine the appropriate placement of her one-year old daughter.  *Id.*  During that assessment, performed by Dr. William Parsons, Claimant displayed signs of "significant cognitive deficits", and was diagnosed with drug abuse, adjustment disorder, personality disorder with elements of antisocial and borderline personality disorder, and given a Global Assessment of Functioning (GAF) score of 45.[1]  AR at 347-353.  He further noted this assessment could be affected either because Claimant was malingering or because she was unable to understand the test parameters well enough to respond appropriately.  AR at 350-351.

---

[1] A GAF score of fifty or less suggest an inability to keep a job. *Oslin v. Barnhart*, 69 F. App'x 942, 947 (10th Cir. 2003).

In August 2010, Claimant was psychologically evaluated at the Carlsbad Mental Health Association.  In her first evaluation by Carl Hinrichs, a licensed social worker, on August 20, she was assessed a GAF of 37 and given a provisional diagnosis of borderline personality disorder and post-traumatic stress disorder relating to childhood sexual abuse and the murder of her sister in 2002.  AR at 220-223, 227.  In addition, Mr. Hinrich found that she had impaired immediate and recent memory.  AR at 225.   On August 30, 2010, she met with Dr. William Geckeler, who diagnosed her with bipolar disorder and anxiety, prescribed her topiramate and clonazepam, and gave her a GAF of 45-50.  AR at  241, 252 .  On October 7, 2010, Claimant met with Dr. Geckeler again, during which visit she reported psychological improvement with the clonazepam and topiramate.  AR at 255-256.  Claimant missed her next two appointments with Dr. Geckeler.  AR 257, 258.  At her next appointments at the Association, with Lisa Atwa, a registered nurse, on November 18 and December 13, 2010, Claimant reported being noncompliant with her prescription regime. AR at 259, 260.

On February 23, 2011 Claimant was evaluated by Dr. Carl Adams.  He diagnosed her with borderline personality disorder and related mood disorders, Major Manic Depressive Disorder, and chronic moderate untreated Intermittent Explosive Disorder. AR at 264.  He further found that she had severe-to-marked limitations interacting with co-workers and supervisors, moderate limitations with concentration and task persistence, moderate-to-mild limitations adapting to changes and mild limitations with detailed instructions, and assigned her a GAF of 60. AR at 266, 267.

On March 23, 2011, Dr. Renate Wewerka assessed Claimant's mental residual functional capacity.  She found that Claimant was moderately limited in a variety of aspects related to work, including an inability to accept instructions from, and respond to criticism by, supervisors, and to

3

interact appropriately with her coworkers.  AR at 283-284, 297.  She also noted that Claimant had borderline intellectual functioning, bipolar disorder, PTSD, and "MDD".  AR at 288, 290, 292, 294.  Her narrative review of Claimant's records reports that Claimant's assertions that Claimant has a "20-30 minute attention span" and "does poorly with instructions. . .changes and stress. . .[and] [h]as problems with authority figures" is supported by the evidence in Claimant's record.  AR at 299.  Dr. Charles Lawrence also reviewed Claimant's records on August 9, 2011, concurring with Dr. Wewerka's assessment and noting that while Dr. Wewerka failed to explain why she found Claimant's limitations with regard to supervisor interaction "severe" but not "marked", that Dr. Wewerka's assessment as supported by Claimant's medical records.  AR at 307-309.

### B. Procedural history

Claimant filed her Title XVI application for disability insurance benefits and supplemental security income on December 16, 2010.  AR at 63.  Her claim was denied on March 24, 2011 and her request for reconsideration denied on August 5, 2011. AR at 68-69.  Claimant requested a hearing on October 13, 2011.  AR at 90-92.  An in-person hearing was held on July 25, 2012.  AR at 43.  The ALJ issued her decision on November 9, 2012 denying Claimant's request for benefits. AR at 35.

## II. APPLICABLE LAW

### A. Standard of review

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence," and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor

substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias,* 933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### B. Disability determination process

For purposes of Social Security disability insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a person satisfies these criteria, the SSA has developed a five step test. *See* 20 C.F.R. § 404.1520. If the Commissioner is able to determine whether an individual is disabled at one step, he does not go on to the next step. *Id*. § 404.1520(a)(4). The steps are as follows:

>   (1) Claimant must establish that he is not currently engaged in "substantial gainful activity." If claimant is so engaged, he is not disabled.

(2) Claimant must establish that he has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that have lasted for at least one year. If claimant is not so impaired, he is not disabled.
(3) Claimant must establish that his impairment(s) are equivalent to a listed impairment that has already been determined to be so severe as to preclude substantial gainful activity. If listed, the impairment(s) are presumed disabling.
(4) If the claimant's impairment(s) are not listed, claimant must establish that the impairment(s) prevent him from doing his "past relevant work." If claimant is capable of returning to his past relevant work, he is not disabled.
(5) If claimant establishes that the impairment(s) prevent him from doing his past relevant work, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled.

See 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

The issue in this case is the fourth step of the five step evaluation process. Step four of the analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [his physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)). Third, the ALJ determines whether, in light of his RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

III.  ANALYSIS

Claimant does not challenge the ALJ's determinations at steps one, two, and three of the sequential analysis. The dispute centers on the ALJ's determination of Claimant's RFC at step four, phase one of the sequential evaluation. Specifically, Claimant argues that the ALJ's decision cannot be supported by substantial evidence for five reasons: (1) the ALJ did not

consider Claimant's February 22, 2000 evaluation by Dr. Frazier; (2) the ALJ improperly relied on only parts of Dr. Adams' report to support her findings;  (3) the ALJ did not incorporate Claimant's evaluations from Carlsbad Mental Health Association in her findings; (4) the ALJ failed to consider Dr. Grant's psychological evaluation of Claimant; (5) the ALJ  misrepresented Dr. Parson's report in her findings.  *Doc. 21*.  The Court, having carefully reviewed the record and applicable law, finds that the ALJ erred in failing to consider Dr. Frazier's report, and the error was not harmless.  Therefore, Claimant's motion to remand should be granted.

      The ALJ is required to evaluate every medical opinion in the Claimant's record, and weigh each opinion in light of the relationship between Claimant and that medical professional. 20 C.F.R. § 404.1527(c); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  Further, when rejecting a medical opinion, the ALJ must provide specific, legitimate reasons for doing so. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

      There is no dispute that Dr. Frazier, a psychologist, is an acceptable medical source. 20 C.F.R. § 404.1513(a); *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).  Although Dr. Frazier's report is included in Claimant's medical records, the ALJ makes no mention of his psychological assessment whatsoever.  This is problematic because Dr. Frazier examined Claimant and noted specific, significant behavioral issues with her: "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

      Nor is this error harmless. In making her determination, the ALJ found, based on the opinions of Drs. Wewerka and Lawrence, that Claimant could concentrate for 2 hours at a time. AR at 33.  In doing so, she strongly implied that Claimant was not suffering from either ADHD

or PTSD, noting that Claimant's own assertion of these symptoms was inconsistent with the medical evidence provided. AR at 33. In fact, Dr. Frazier's report indicates that Claimant may indeed have been suffering from both ailments for as long as ten years prior to Dr. Wewerka's evaluation, and also supports Dr. Wewerka's inconsistent conclusion that Claimant could only focus her attention for 20-30 minutes at a time. AR at 299. Further, Dr. Frazier's report contains detailed evidence of Claimant's early inability to interact appropriately with peers and authority figures, a finding that the ALJ does not distinguish when making her own finding that Claimant can "interact adequately with coworkers and supervisors." AR at 33. In light of the ALJ's failure to discuss Dr. Frazier's report, this matter should be remanded. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003)(noting that the ALJ is required to consider every physician opinion, regardless of whether the physician is a treating physician or not and provide specific reasons for rejecting that opinion).

## IV.   CONCLUSION

Claimant has demonstrated that the ALJ improperly failed to consider each medical opinion in her record in violation of 20 C.F.R. § 404.1527(c), and the ALJ's error is not harmless. I therefore recommend that Court reverse the Commissioner's decision denying Claimant benefits and remand this action to the Commissioner to conduct further proceedings. On remand, the ALJ shall ensure that all medical evidence in the record is considered.

    /s/ Steven C. Yarbrough  
STEVEN C. YARBROUGH  
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**